## In re HARPER.

(Circuit Court of Appeals, Second Circuit. April 30, 1907.)

### No. 131.

BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—WILLS—CONSTRUCTION—PRECATORY TRUST.

> A testator by a will made certain devises and bequests to each of his three sons, and left his residuary estate to his wife, "absolutely and without reservation," but expressing his desire that she should make a will, after advising with the sons, to carry out his wishes as far as practicable, confiding in her sense of justice and discretion. He subsequently revoked such will and made another leaving his entire estate to his wife, confiding in her ability and integrity to make "as early as practicable contemplated bequests which she is aware of," to the sons. After his death his wife made her will, by which she divided the greater part of her estate between the sons, share and share alike. Prior to her death a large part of the property was divided between the sons with her consent, each receiving more than was left them by the first will of their father. *Held* that, if the will of the father created a precatory trust, in the absence of any evidence as to what bequests were contemplated except the prior will, such trust had been fulfilled by the mother prior to her death, and that on her death after the bankruptcy of one of the sons the property received by him under her will came from her estate and was not a part of the assets of his estate in bankruptcy.

Petition to Review Order of the District Court of the United States for the Southern District of New York.

E. Adams and E. Bisbee, for petitioner.

E. A. Turrell, for respondent.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. In view of the very considerable pecuniary interests involved in the disposition of this case, we have thought it proper to state for future reference the reasons which were assigned orally at the conclusion of the argument for affirming the order under review. The order refused the application of the trustee to compel the bankrupt to assign and turn over to him the property which came to the bankrupt's hands from the estate of his deceased mother after the adjudication in bankruptcy. If the bankrupt's title to this property vested in him by the will of his deceased father, it inured prior to the adjudication, and would be part of the assets belonging to his creditors to be distributed in the bankruptcy proceeding.

The facts are these: April 1, 1889, John Harper, the father of the bankrupt, made his will, by which, after leaving certain bequests to nieces and nephews, he gave to his son John certain real estate and certain shares of stock, and to his son Charles certain real estate and certain shares of stock, and to his son Orlando, the bankrupt, he gave $40,000, "the sum I loaned him for aid in business and took memorandums for same payable on demand," and he also gave to him a certain watch. The remainder of his estate, real and personal, he bequeathed and devised to his wife, Lydia, "absolutely and without reservation." In a subsequent clause was this statement:

"It is also my desire that she will as soon as practical make a judicious will, advising with my sons, and being guided by the equitable laws of Pennsylvania, and to carry out my wishes as far as practicable. There are many things to do which I leave to her sense of justice and discretion."

June 3, 1889, he made a codicil to this will, revoking the devise and legacy to John, and substituting therefor a devise and bequest in trust for him of the rents and profits during his life, "the same not to be liable * * * for any debts or liabilities" of John or "subject to any execution or attachment against him," and whereby at the death of John the trustees were to account for the property to his wife and children. November 6, 1889, he canceled the will and codicil in writing, and on November 8th made a new will revoking all wills theretofore made, and giving to his wife all his real and personal estate, "confiding in her ability entirely and faultless integrity that should it be the will of God to withdraw me suddenly from earthly life that she make as early as practicable contemplated bequests which she is aware of to my sons John A. Harper, Orlando M. Harper and Charles S. Harper." In April, 1891, the testator died, leaving an estate of the value of about $1,000,000. Shortly thereafter his wife, Lydia, made her will, in which, after making a provision for her grandson, she bequeathed all the rest and residue of her estate, real and personal, to her sons, John, Orlando, and Charles, share and share alike. In February, 1902, the three sons made an agreement in respect to the distribution of the mother's estate upon her death. During her life, and with her approval, they distributed among themselves a considerable portion of her property. Mrs. Harper died in January, 1904, and subsequently her will was duly proved and admitted to probate in the probate court having jurisdiction thereof.

If a precatory trust was created by the will of the father, it was one which devolved upon the mother the duty of making by will certain contemplated bequests. There is no satisfactory evidence what bequests were contemplated, except those which were mentioned in the previous will and codicil of the father. That will indicates that he had expressed his wishes to her, and wished her to carry them out as far as practicable, being guided by the advice of her sons and the equitable laws of the state, and that he meant to leave that which remained to be done to her sense of justice and discretion. The codicil indicates that he did not wish the bequests to his sons to be such that they would lose the benefit of them in case they became financially irresponsible. So far, then, as regards all the evidence in the case, except the will of the mother herself and the subsequent arrangements made between the sons, it establishes merely that when the last will was made the father contemplated that the sons should have certain definite bequests, and such other provisions out of his estate as their mother at her discretion should see fit to make by her will. The request in the earlier will that she should be guided by the advice of her sons and the laws of Pennsylvania was omitted in the last will. She was at liberty, therefore, giving the precatory clause of the will due force, to make such disposition of all the estate coming to her by his will as she thought best and just, except as to the definite bequests in the earlier will and codicil. The fact that after the father's death

she made by her own will more liberal provisions for the sons is not very important. She knew that she had the widest discretion, and if she advised with the sons, as the father had requested her to do in the earlier will, it was not strange that she should have concluded to devise the bulk of the estate equally between them. The agreement between the sons themselves is still less important; they all wanted such a division of the estate as the one they agreed upon. The whole evidence, therefore, leads us to the conclusion that there was no precatory trust by which it became the mother's legal duty to make any disposition of the estate in favor of the sons, other than to recognize and to effectuate the bequests mentioned in the first will and codicil.

The petition in bankruptcy was filed in August, 1902. The bankrupt had previously, and during the years 1891 to 1898, inclusive, received from his father's estate in the hands of his mother money and property far in excess of any interest he had in it under the precatory trust. There was consequently no existing interest to which the title of the trustee could attach.